UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| NICOLAAS VAN DIJEN,<br><br>                Plaintiff,<br><br>    v.<br><br>EQUIFAX INFORMATION SERVICES LLC; CITIBANK NA,<br><br>                Defendant. | Case No. 3:23-cv-05908-TMC<br><br>ORDER DENYING MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS |

Before the Court is Defendant Citibank's motion to compel arbitration of Plaintiff Nicolaas Van Dijen's claims and stay this case. Dkt. 21. For the following reasons, the motion is DENIED.

### I. BACKGROUND[1]

Van Dijen is a Washington resident who opened a credit card and associated account with Citibank in September 2011. Dkt. 1-3 at 1; Dkt. 22 at 2; Dkt. 27-1 ¶ 4. In October 2015, Citibank sent Van Dijen a card agreement containing an arbitration clause that reads, in relevant part:

---

[1] "In reviewing motions to compel arbitration . . . a court must consider all relevant, admissible evidence submitted by the parties and contained in pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits." *Herrera v. Cathay Pacific Airways Limited*, 94 F.4th 1083, 1085 (9th Cir. 2024) (internal quotation marks omitted). The Court assumes the allegations in the complaint to be true. *Id.*

**ORDER DENYING MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS** - 1

"You or we may arbitrate any claim, dispute or controversy between you and us arising out of or related to your Account, a previous related Account or our relationship (called 'Claims')." Dkt. 22 at 17. The agreement also provides that "[A]ll Claims are subject to arbitration, no matter what legal theory they're based on or what remedy (damages, or injunctive or declaratory relief) they seek, including Claims based on contract, tort (including intentional tort), fraud, agency, your or our negligence, statutory or regulatory provisions, or any other sources of law." *Id.* Van Dijen "had the option to reject the 2015 Card Agreement" but did not do so. *Id.* ¶ 7.

In November 2020, to "streamline [his] finances," Van Dijen decided to pay off the card and close the account. Dkt. 27-1 ¶¶ 4, 6–7, 12. Van Dijen states he never made additional purchases with the card after closing it, *id.* ¶ 13, and never "reactivated" the card "or authorize[d] anyone else to do so." *Id.* ¶ 18.

More than two years later, in December 2022, Van Dijen logged into his "Experian account, through Chase, and discovered that there was a balance on a Citibank card" associated with an account and account number he did not recognize. *Id.* ¶¶ 21–22. Van Dijen called Citibank, which told him it believed he had "reactivated" his old account in November 2020, using his phone number and "an old Hotmail email address." Dkt. 1-3 at 4. Van Dijen protested that he had not authorized anyone to open a card in his name and asked Citibank to investigate the account for potential fraud. Dkt. 27-1 ¶ 25. Citibank opened an investigation. *See id.* ¶¶ 29–30.

Van Dijen also "disputed" the opening of the new account to Trans Union (a credit reporting agency, Dkt. 1-3 at 6). *Id.* at 5. Trans Union informed Van Dijen that the account was "activated" in Wisconsin and was associated with an address in Michigan. *Id.* Van Dijen had never lived at the address and had never visited either state. Dkt. 27-1 ¶ 48.

**ORDER DENYING MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS** - 2

On March 31, 2023, Citibank sent Van Dijen a letter informing him that it closed its fraud investigation after determining that he was "responsible." *Id.* ¶ 53. The letter states, as one of the reasons for this determination, that "[t]he account number in question was the result of a previous account closure. While you may not have recognized this account number, it is related to the original account you opened with us." Dkt. 27-3.[2]

Van Dijen filed this case in Pierce County Superior Court on or about September 8, 2023, (Dkt. 1 ¶ 1, Dkt. 1-3), and Defendant Equifax Information Services LLC—which settled the claims against it and is no longer a party (Dkts. 14, 25)—removed the case to this Court on October 6, 2023 (Dkt. 1).

Van Dijen brings a claim against Citibank under the Federal Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681s-2(b), for failing to provide accurate information and "correctly report results of an accurate investigation,"; "failing to permanently and lawfully correct its own internal records to prevent the re-reporting of Citibank's representations,"; failing to "accurately respond" to credit reporting agencies, including that the debt incurred from the new account was "disputed";[3] and failing to properly investigate Van Dijen's "disputes of Citibank's representations." Dkt. 1-3 at 7–8. He also brings a claim against Citibank under the Washington Consumer Protection Act ("CPA"), RCW 19.86.020, for "unfairly and/or deceptively" allowing "thieves to reopen and use a credit card"; failing or refusing "to cease collection of a fraudulent account after being notified that the accounts were identity theft"; failing to provide requested information to Van Dijen regarding his "direct-to-creditor fraud disputes"; and selling the new

---

[2] Nothing in the briefing before the Court explains what, exactly, these sentences mean.

[3] Plaintiff alleges that his credit score dropped by one hundred points because of the debt incurred on his new account. *See* Dkt. 1-3 at 5.

**ORDER DENYING MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS** - 3

account to Cavalry SPV I, LLC, a "debt buyer," without notifying it that the debt on the account was "fraudulent." Dkt. 1-3 at 8.

Citibank filed the instant motion on January 9, 2024. Dkt. 21. The next day, it re-noted the motion for March 1, 2024. Dkt. 23. Van Dijen responded and Citibank replied. Dkts. 27, 28. The motion is ripe for the Court's consideration.

## II.   DISCUSSION

### A.   Legal Standards

"The [Federal Arbitration Act] governs arbitration agreements in 'contract[s] evidencing a transaction involving commerce.'" *Fli-Lo Falcon, LLC v. Amazon.com, Inc.*, 97 F.4th 1190, 1193 (9th Cir. 2024) (quoting 9 U.S.C. § 2). The Act makes agreements to arbitrate "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any [appropriate] United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. "A party seeking to compel arbitration has the burden under the FAA to show (1) the existence of a valid, written agreement to arbitrate; and, if it exists, (2) that the agreement to arbitrate encompasses the dispute at issue." *Ashbey v. Archstone Prop. Mgmt., Inc.*, 785 F.3d 1320, 1323 (9th Cir. 2015).

As to the former, the Court must make the threshold determination that a valid contract was formed before ordering arbitration. *See Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 719 (9th Cir. 1999); *Lowden v. T-Mobile USA, Inc.*, 512 F.3d 1213, 1217 (9th Cir. 2008). Courts apply state contract law to determine whether the parties formed a valid agreement to arbitrate. *Lowden*, 512 F.3d at 1217 (citing *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)).

**ORDER DENYING MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS - 4**

As to the latter, "[t]he scope of an arbitration agreement is governed by federal substantive law." *Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1126 (9th Cir. 2013); *see also Mediterranean Enters., Inc. v. Ssangyong Construction Co.*, 708 F.2d 1458, 1463 (9th Cir. 1983) ("An action brought under the Act is properly characterized as arising under the body of federal law regulating interstate commerce."). "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration[.]" *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983); *see Wagner v. Stratton Oakmont, Inc.*, 83 F.3d 1046, 1049 (9th Cir. 1996) (noting that courts "giv[e] due regard to the federal policy in favor of arbitration by resolving ambiguities as to the scope of arbitration in favor of arbitration."). "To decide whether an arbitration agreement encompasses a dispute a court must determine whether the factual allegations underlying the claims are within the scope of the arbitration clause[.]" *Jackson v. Amazon.com, Inc.*, 65 F.4th 1093, 1104 (9th Cir. 2023).

**B.     Analysis**

Although doubts as to the scope of an arbitration provision must be resolved in favor of arbitration, this policy does not authorize courts to displace the agreement itself. *See AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986) ("[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." (quoting *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582, 80 S. Ct. 1347, 4 L. Ed. 2d 1409 (1960))). "[A]rbitration is a matter of contract, and courts must enforce arbitration contracts according to their terms." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 529 (U.S. 2019); *see United States ex rel. Welch v. My Left Foot Children's Therapy*, LLC, 871 F.3d 791, 796 (9th Cir. 2017) ("[W]hen examining the scope of an arbitration agreement, [a]s with any other contract dispute, we first look to the express terms [of the parties' agreement].").

**ORDER DENYING MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS** - 5

Here, the relevant terms of the arbitration agreement read: "You or we may arbitrate any claim, dispute or controversy between you and us arising out of or related to your Account, a previous related Account or our relationship." Dkt. 22 at 6.

"In examining arbitration agreements, courts construe the terms 'arising out of' or 'relating to' broadly." *En Pointe Techs. Sales, LLC v. Ovex Techs. (Private) Ltd.*, No. 2:17-cv-04362 PSG, 2018 U.S. Dist. LEXIS 141065, at *9 (C.D. Cal. Aug. 17, 2018) (first citing *Schoenduve Corp. v. Lucent Techs., Inc.*, 442 F.3d 727, 732 (9th Cir. 2006); then citing *KKE Architects, Inc. v. Diamond Ridge Dev. LLC, et. al.*, No. CV 07-06866 MMM (FMOx), 2008 WL 637603, at *6 (C.D. Cal. 2008)). However, "there is a difference between a clause being 'broad' and 'unlimited,'" and arbitration clauses using this language "are not boundless because both of the phrases, 'arising out of' and 'related to,' mark a boundary by indicating some direct relationship." *Welch*, 871 F.3d at 798 (citing *Doe v. Princess Cruise Lines, Ltd.*, 657 F.3d 1204, 1218 (11th Cir. 2011)); *see Simula*, 175 F.3d at 721 ("[T]he language 'arising in connection with' reaches every dispute between the parties having a *significant relationship* to the contract and all disputes having their origin or genesis in the contract." (emphasis added)); *see also Seifert v. United States Home Corp.*, 750 So. 2d 633, 638 (Fla. 1999) ("As the prevailing case law illustrates, even in contracts containing broad arbitration provisions, the determination of whether a particular claim must be submitted to arbitration necessarily depends on the existence of some nexus between the dispute and the contract containing the arbitration clause."). The Ninth Circuit in *Welch* explained:

> [T]hough we have recognized that the phrase 'relate to' is broader than the phrases 'arising out of' or 'arising under,' we agree with the Eleventh Circuit that 'related to' marks a boundary by indicating some direct relationship; otherwise the term would stretch to the horizon and have no limiting purpose in violation of the cannon of *verba cum effectu sunt accipienda*.

**ORDER DENYING MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS** - 6

871 F.3d at 798.[4]

The Ninth Circuit, along with other courts, has similarly rejected the argument that "arising under" or "relating to" language is satisfied by a "but for" causal connection between the occurrence of the condition in the arbitration clause and the claims at issue. *See Welch*, 871 F.3d at 799 (agreeing with the Fifth and Eleventh Circuits that claims are not arbitrable merely because the agreements covered claims relating to employment and the controversy "would not have occurred but for the plaintiff's employment"); *Seifert*, 750 So. 2d at 638 ("[T]he mere fact that the dispute would not have arisen but for the existence of the contract and consequent relationship between the parties is insufficient by itself to transform a dispute into one 'arising out of or relating to' the agreement." (collecting cases)).

The Eleventh Circuit has also stated the holding adopted in *Welch* as follows: "[w]hen determining if a dispute 'arises out of' or 'relate[s] to' an underlying contract, we generally consider whether the dispute in question 'was an immediate, foreseeable result of the performance of contractual duties.'" *Hearn v. Comcast Cable Commc'ns, LLC*, 992 F.3d 1209, 1213 (11th Cir. 2021) (citing *Princess Cruise Lines*, 871 F.3d at 1218–19). Consistent with that framing, the Ninth Circuit and other courts have focused on whether the condition in the arbitration agreement (i.e., the parties' contractual or employment relationship that claims must "arise from" or be "related to" to trigger the arbitration clause) would be relevant to

---

[4] *Welch*'s holding regarding the scope of the phrase "arising out of or related to," which was made in the context of an employment agreement, is not limited to particular types of claims. *See* 871 F.3d at 799 ("[W]e are persuaded by the reasoning of the Fifth and Eleventh Circuits, which have previously interpreted arbitration agreements covering disputes that 'arise out of' or 'relate to' a contractual or employment relationship. Though neither circuit decided this issue in the context of a FCA claim, we find their textual analysis compelling and instructive."); *see also Intel Corp. v. Tela Innovations, Inc.*, No. 3:18-cv-02848-WHO, 2018 WL 4501146 (N.D. Cal. Sept. 18, 2018) (applying *Welch's* textual analysis to a forum selection clause in a nondisclosure agreement relating to two companies' patent licensing discussions).

**ORDER DENYING MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS** - 7

determination of the claims at issue. *See Cooper v. Ruane Cunniff & Goldfarb Inc.*, 990 F.3d 173, 183–84 (2d Cir. 2021) (citing *Welch* for the proposition that "a claim will 'relate to' employment only if the merits of that claim involve facts particular to an individual plaintiff's own employment" and "weigh[ing] heavily the consideration that none of the facts relevant to the merits of Cooper's claims against Ruane relates to his employment."); *Seifert*, 750 So. 2d at 638 ("These cases hold that for a tort claim to be considered 'arising out of or relating to' an agreement, it must, at a minimum, raise some issue the resolution of which requires reference to or construction of some portion of the contract itself." (citing *Hersman, Inc. v. Fleming Cos., Inc.*, 19 F. Supp. 2d 1282, 1287 (M.D. Ala. 1998), *aff'd*, 180 F.3d 271 (11th Cir. 1999))); *cf. Jackson*, 65 F.4th at 1102 (distinguishing the Ninth Circuit's decision in *Simula*, 175 F.3d 716, because the court in that case found claims to be arbitrable where their "resolution . . . involved interpreting the contract terms").

Applying these principles here, it was not an "immediate, foreseeable" result, *Hearn*, 992 F.3d at 1213, of Van Dijen's use of his original credit card or his relationship with Citibank that third parties unknown to him would reopen a closed account and initiate an account with a new account number using his personal information; that Citibank would fail to take the proper steps to prevent this from happening; that it would fail to properly investigate the alleged fraud; that it would fail to provide requested information to Van Dijen regarding the new account; or that it would sell the account to a debt buyer without notifying it that the debt on the account may have been fraudulent.

The Court views as instructive the South Carolina Supreme Court's decision in *Aiken v. World Finance Corp. of S.C.*, 373 S.C. 144 (2007), *cert. denied*, 552 U.S. 991 (2007). In *Aiken*, employees of the defendant consumer finance company (which the plaintiff had previously obtained consumer loans from) stole the plaintiff's personal information and "conspired to use

**ORDER DENYING MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS** - 8

[the information] to obtain sham loans and embezzle the proceeds for the employees' personal benefit." 373 S.C. at 147. Upon being approved for the loans, Aiken had entered into arbitration agreements with World Finance, each of which provided, in relevant part, that:

> ALL DISPUTES, CONTROVERSIES OR CLAIMS OF ANY KIND AND NATURE BETWEEN LENDER AND BORROWER *ARISING OUT OF OR IN CONNECTION WITH* THE LOAN AGREEMENT, OR ARISING OUT OF ANY TRANSACTION OR *RELATIONSHIP* BETWEEN LENDER AND BORROWER OR ARISING OUT OF ANY PRIOR OR FUTURE DEALINGS BETWEEN LENDER AND BORROWER, SHALL BE SUBMITTED TO ARBITRATION . . . .

*Id.* (emphasis added). Upon discovering the employees' conduct, Aiken brought various tort claims against World Finance, and World Finance moved to compel arbitration of the claims. *Id.* The court noted that "courts generally hold that broadly-worded arbitration agreements apply to disputes in which a '*significant relationship*' exists between the asserted claims and the contract in which the arbitration clause is contained." *Id.* at 149 (emphasis added) (citing *Zabinski v. Bright Acres Assocs.,* 346 S.C. 580, 596–97, 553 S.E.2d 110, 118–19 (2001), which in turn cited *Long v. Silver,* 248 F.3d 309 (4th Cir. 2001)).

World Finance argued, like Citibank does here, that "because Aiken's contracts with World Finance gave the conspirators access to Aiken's information in order to carry out their crimes, there is a significant relationship between Aiken's claims and the underlying loan agreement, thereby warranting arbitration." *Id.* at 149–50. But the court found that "the parties' prior dealings under the loan agreements hardly rises to the level of 'significant.'" *Id.* at 150. Like the Eleventh Circuit, the court instead focused on the foreseeability of the conduct at the time the parties formed the arbitration agreements:

> [W]e find the theft of Aiken's personal information by World Finance employees to be outrageous conduct that Aiken could not possibly have *foreseen* when he agreed to do business with World Finance. Consequently, in signing the agreement to arbitrate, Aiken could not possibly have been agreeing to provide an alternative forum for settling claims arising from this wholly unexpected tortious conduct.

**ORDER DENYING MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS** - 9

*Id.* at 151 (emphasis added).

This reasoning is equally persuasive here. This motion turns on a question of contract interpretation. *See Welch*, 871 F.3d at 796. Arbitration agreements are "'a matter of contract' that requires [courts] 'to honor parties' expectations.'" *Id.* at 796 (quoting *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 351 (2011)); *see also Luna v. Kemira Specialty, Inc.*, 575 F. Supp. 2d 1166, 1178 n.43 (C.D. Cal. 2008) ("In construing the scope of an arbitration clause, the court 'must ascertain and implement the reasonable expectations of the parties . . . .'" (quoting *Spear, Leeds & Kellogg v. Central Life Assur. Co.*, 85 F.3d 21, 28 (2d Cir. 1996)). And the Supreme Court has cautioned against "forc[ing] unwilling parties to arbitrate a matter they reasonably would have thought a judge, not an arbitrator, would decide." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 945 (1995).

Neither the alleged re-opening of Van Dijen's account by people he did not know, nor Citibank's alleged failure to address it—both of which occurred two years after Van Dijen closed and stopped using the card (Dkt. 27-1 ¶¶ 4, 6–7, 12, 13, 21–22)— were reasonably foreseeable results of Van Dijen's contractual relationship with Citibank or any actions he took with respect to his old account. While the arbitration agreement provides that claims are arbitrable regardless of "what legal theory they're based on," including "fraud," Dkt. 22 at 17, this provision is a caveat to the primary arbitration provision, which limits the scope of the agreement to those claims arising out of or related to Van Dijen's account and the parties' relationship. *See id.* Van Dijen's claims relate to third parties using his information to initiate a new account with a new account number. The arbitration agreement referred only to one "account," the one he closed in 2020, and cannot reasonably be construed to include future unknown accounts opened by third parties without Van Dijen's permission. Additionally, while the arbitration agreement expressly

**ORDER DENYING MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS** - 10

covers "a previous related Account," Dkt. 22 at 17, it does not state that it covers *future* "related" accounts. Thus, even if the "legal theory" provision could show that Van Dijen anticipated the possibility of some fraud related to his *original* account (or a previous related account) under the arbitration agreement, alleged fraud as to a *new* account opened by others in Van Dijen's name without his knowledge was not foreseeable at the time the parties entered into the contract.

        This holding is consistent with the Ninth Circuit's guidance and related decisions of other courts. That Van Dijen's claims would not have occurred "but for" the existence of his previous account or "relationship" with Citibank is not enough to compel arbitration. *See Welch*, 871 F.3d at 799; *Aiken*, 373 S.C. at 150 ("[T]he mere fact that the dispute would not have arisen but for the existence of the contract and consequent relationship between the parties is insufficient by itself to transform a dispute into one 'arising out of or relating to' the agreement." (quoting *Seifert*, 750 So. at 638)). Citibank's argument (Dkt. 21 at 9) that "but for the [old] Account, there would be no disputes relating to the Account and, therefore, no claims against Citibank" contradicts this precedent and must be rejected. Moreover, because Van Dijen's claims concern Citibank's conduct as to the allegedly fraudulent new account created without Van Dijen's knowledge, those claims do not necessarily require any substantive discussion of Van Dijen's prior account or relationship with Citibank. *See Seifert*, 750 So. 2d at 638; *Cooper*, 990 F.3d at 183–84; *cf. Jackson*, 65 F.4th at 1102. Van Dijen would presumably bring the same claims against Citibank if he never had an account there to begin with but identity thieves had used his information to open one in his name. *See Jackson*, 65 F.4th at 1103 (holding that claims alleging that the plaintiff's employer wiretapped and "spied on" his private communications in Facebook groups did not "aris[e] out of or relat[e] in any way" to his terms of service agreement with the employer because "even if Jackson had no contract with Amazon but had been permitted to join

**ORDER DENYING MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS** - 11

the groups for some other reason, he would be able to bring the same claims for invasion of privacy").

### III. CONCLUSION

In sum, regardless of the "verbal formulae" used to describe the "significant relationship" test, *see Hemispherx Biopharma, Inc. v. Johannesburg Consol. Invs.*, 553 F.3d 1351, 1366–67 (11th Cir. 2008), the Court concludes that the existence of Van Dijen's original account with Citibank, and the parties' consequent "relationship," are "incidental facts" that do not mean his claims against Citibank "arise from" or are "related to" either. *See Princess Cruise Lines*, 657 F.3d at 1219. Van Dijen's claims therefore do not fall within the scope of the arbitration agreement, and Citibank's motion to compel arbitration is DENIED.

Dated this 13th day of May, 2024.

Tiffany M. Cartwright
United States District Judge